Oral argument not to exceed 15 minutes per side. James Kidwell Scott and Joshua Bond for the appellant. You may proceed. Good morning, your honors. I'm James K. Scott on behalf of the Adkisson appellants in this case. I feel somewhat that I'm put in a unique position because I feel like I'm here on behalf of the interest of the Tennessee Valley Authority as well based upon the unique facts and nature of this case. I believe under the Twombly case, Gobber, Mays, Berkowitz, and its progeny, We've been presented with facts that go beyond mere negligence in many of the allegations that we've made to where we've alleged intentional conduct that violated directives that were directly set forth by the Tennessee Valley Authority in their contract with Jacobs, in which I think on page six of that contract that the appellee has submitted as an exhibit to this tribunal indicates that they are a completely, truly independent contractor that was given complete power to oversee a project and to protect under the corrective action plan that was designated by the Tennessee Department of Environment and Conservation a duty and responsibility to protect the workers that were working within the confines of the site remediation area. And in doing and committing the actions that were submitted in the affidavits to the district court and the allegations of retaliation for refusal to allow respiratory protection, refusal to allow dust masks, refusal to allow proper protective equipment, the directives of the agency involved were violated, the rights of the workers were of those regulations in order for you to recover? Or can you just show that the regulations don't, how should we say, mandate that you not be liable for that kind of activity? What's unique, Your Honor, with regard to my interpretation and with regards to this case, obviously at all times I'm going to defer to your interpretation, but what the standard I believe is, is whether or not the directives allow for a choice. And then if they do allow for a choice, you fall back upon whether there are directives in place under Gobbert that mandate a course of action, or as a matter of public policy, was the actor in this case, Mr. Welburn's client, Jacobs Engineering, acting in furtherance of public policy? And we are respectfully submitting, based upon the contract and what they were are claiming that they are injured, and they are directed to protect their safety, and with regard to the affidavits that were submitted, are requesting dust masks. So just to make sure I'm grasping this first argument, what you seem to be saying is an argument that would have made TVA liable if TVA had done all of this. In other words, had there been no independent contract to do this, but it had been only TVA employees that had cleaned up this ash spill? Just to make sure I'm understanding, are you making an argument, I know that's not this case, are you making an argument that had this been done by TVA employees, TVA could have been sued for their conduct? Judge Sutton, this is... I'm just curious, what's the answer to that? I'll give you an answer in regards to that. In doing so, I want to go back to the Mays case, which was the case involving... Is the answer yes or no, and then I'll... Yes, sir. So, in other words, the first argument you're making is one that would make them liable, and if they were liable, you're saying, well, then of course, so should an independent contractor be liable. In this... Because you don't fit under discretionary function or any other exceptions or ways we characterize that. In this particular situation, we're presented with the facts that TVA did not engage in this conduct that was averted in our complaint, that I think under the burden should... No, I know, but I'm now positing that it's as if Jacobs Engineering are all employees of TVA, and I thought you were trying to make the point that there were sufficiently clear directives here that even if TVA had done all of this, denying the respirator here, giving it there, they would have been liable. No. I was not trying to make that point. What's the answer to the point? The answer to the point is... If Jacobs Engineering did not exist and TVA employees did every single thing alleged here, could TVA be sued or not? Yes. They could? Yes, they could. And that's because... That's because of the Mays case. Okay. And it goes back to Gaubert. It goes back to Twombly. Just tell me the principle. The principle would be when people are seeking help for their safety in a circular remediation site, given the facts that are presented to this court, where you have supervisors alleging that they're going to be hanging themselves with their own genitalia if they were to wear a dust mask. They will be fired if they wear a dust mask to protect themselves from toxic constituents that they're working in the middle of. That violates public policy. Whenever you have an environmental cleanup, isn't the safety plan as to how you do the cleanup going to be really important and involve an awful lot of discretion? Because that's the whole game. How do we do this in a safe way? The safety plan is of the utmost importance, and that's where you go back, I think, to the Reminga case that was used in the Mays case that allowed for recovery for the property owners over the TVA ash spill. And that is where, when government undertakes a duty, in that particular case, to publish navigational charts that dealt with being able to enable people to navigate the rivers safely and they negligently omit the hazards in those rivers, they found that the government there was liable. Here, we are not dealing truly with negligent conduct. We are dealing with intentional conduct that not only was in violation of what they were supposed to do with my clients, which were the workers. They violated the directives of TVA as a matter of contract. In this contract that's submitted before the court, TVA gave specific directives to protect the workers, to follow all laws, regulations, and directives, and they didn't. And we're submitting that, I think it begins in paragraph 54, that they misrepresented facts to the workers, they misrepresented facts to TVA, they breached their obligations to TVA under a multimillion-dollar contract, and we go on to talk about how, and I believe it's in paragraph 50, or 63, or 58, they altered air monitoring results. And in the case that they cite, I believe it's the Rosebush case, how this is distinguishable from that, and the Rosebush case is where they put forth, there was an absence of railings in the public parks, and there was forced- Fire pits. Yeah, the fire pits. What they did here is so distinguishable. They put my clients, in violation of TVA directives, and they are complete independent contractors managed this site, they put them into the fire. It wasn't that they didn't- Well, there were- Yes, sir, Judge. The plan had permissible exposure limits, right? It was set. Yes, but when you take those permissible exposure limits away by altering the air monitoring results, as we have alleged in both complaint and, I believe, affidavit, and I believe our allegations will be taken as true, but you are the arbiters of the burden here. When they take the monitoring accuracy away, they eradicate the whole purpose and management of that site. Wait, there was a separate contractor, what, InSafe, Inc., performed the industrial hygiene monitoring, right? In part. In part. Our allegations are that Jacobs engaged in that. The affidavits support that. They altered the air monitoring results and altered the method and manner in which the air was collected, and by doing so, people were injured, and I believe under the Shalala case that those facts and allegations are to be taken as true. Supposedly, Jacobs set the site action levels for flash constituents at 50% of the applicable permissible exposure limit, but you're saying that, well, but what they really did is altered the actual, falsified the tests? Yes, sir, Your Honor. Yes, sir. And I think those facts under the burden are to be taken as true. And paragraph 58 of your complaint, is that what you were saying before? Yes, sir. Yes, sir. And I think in the opinion, there are certain things, and I feel almost somewhat a level of guilt attacking the opinion because I have the highest respect for Judge Varlin, not only as a jurist, but as a man, and I consider him a friend. But I think if you look at paragraphs 54, 55, 58, 63, and then 84 through 90, the complaint is wrought throughout with allegations of breaches of duty to TVA and to my clients that violate public policy, and there's a public policy interest where these people should have access to the courts because if the court system is not there to protect the oversight of complete independent governmental contracting when TVA trusts them to manage this site for the benefit of the public and to my clients, and they intentionally alter safety issues. Well, TVA could sue, right? I mean, you said several times that they breached the obligations to TVA. Yes, they have a right to sue as a matter of contract or seek indemnity, and that issue isn't before the court at this juncture. Right now, there may be no reason for TVA to seek indemnity because it has been ruled at this juncture that we don't have subject matter jurisdiction. But I think as a matter of public policy, we do and we should. Are you familiar with the U.S. Supreme Court's Boyle decision? Yeah, I am familiar with the Boyle decision. Say one looks at this case through that prism, how do you do under that test? Or maybe just more directly, how do you get around that case? How do I get around that case? I think because under Boyle, and I think under the progeny in many of the cases that also involved the U.S. military and aircraft designs, the military engaging in environmental remediation, what you had was negligent actors acting in good faith in adherence with public policy and those just contained allegations of mere negligence. In this particular instance, the allegations are significantly more severe. So severe that I made them with trepidation. I haven't made allegations like this, I don't think, since I was a prosecutor 16 years ago. I think that's how they're distinguishable, Judge Sutton. So you get outside Boyle by just saying it's more of an intentional tort, reckless. Once you do that, you're... I don't think you do so by saying it. I think you do so under the standard in which the allegations are to be taken as true. In this particular case, we have these allegations and under this 12B1 standard, we also submitted affidavits in support of those allegations that are to be taken as true, but if you look at it in reality, we've also given the court and gave the district court proof of the truth. Thank you, Counsel. Thank you, Your Honor. May it please the court. Joe Wellborn on behalf of Appellee Jacobs Engineering Group. Your Honors, this case is a case that presents issues that have been decided by the United States Supreme Court, by the Fifth Circuit, by the Ninth Circuit. This is a case where these courts have addressed these very similar issues, deal with a federal governmental agency that contracts with a private contractor to perform a necessary government function. And in this case, we had a horrible coal ash spill at the TVA plant in Kingston, Tennessee. EPA and TDEC come in, look at it, and under circular mandate, TVA, you've got to clean this mess up. TVA then contracts with my client to, in effect, create a safety plan to do such work. And, you know- But you don't argue that everything that's done pursuant to that plan is immune from suit, do you? Or do you? Well, I do. Then let's say that pursuant to that plan, you drive down the street to pick up some gas masks, and you drive too fast and hurt somebody. That's pursuant to the plan, isn't it? It is. And you would say there's no liability there under the discretionary function test? No, I would not. Why? Now, you've just contradicted what you just said. Well, I have, but I would- So it's just not that easy. You have to draw a line and say, well, driving too fast is just not something that the plan permitted. It didn't forbid it, but it didn't prohibit it. It's just something that's not going to undermine the carrying out of the plan to say that when you're making choices when you're carrying out the plan, you can't be negligent. You would agree with that? I would agree with that, Your Honor. Well, if that's true, why don't at least some of their allegations fit within that? Because it seems like at least some of them are not things that the plan affirmatively permits, but rather gives some choice. Whenever you carry out any plan, you're going to exercise some choice, what street to go down, how fast to drive, whether to take off for lunch, right? You can't have regulations for all of that, but some of that's got to be recoverable under negligence, right? You're right, Your Honor. So what's the, it's not really helping us to say, oh, if they're carrying out the plan, they're not liable under discretionary function or contractor liability or whatever you want to call it. In this case, though, Your Honor, I believe that the record before this court establishes at length that every action which they complain of, that Jacobs was conducting that conduct in accordance with the plan. What if they were covering up and altering the actual monitoring results? Your Honor, I'd like to address that because the allegations that are in the complaint and in the record before this case, they phrase it in a vague improper air monitoring. I had never seen this allegation of altering air monitoring results in this record until this appeal was filed. But that's not in paragraph 58? I do not believe it is, Your Honor. I do not. I believe that it says that Jacobs engaged in intentional improper air monitoring. Does not say anything about altering or changing air monitoring. It says they engaged in improper air monitoring, but then it doesn't even go to the first. How did they improperly air monitor? We've put forth proof, Your Honors, that suggests, and it's undisputed, they have not come forward with any evidence to dispute it, that Jacobs conducted the air monitoring in accordance with the plan that they prepared. That then TVA and the EPA approved. There's lengths and lengths of affidavit testimony explaining how the air monitoring was done. How it was consistent with the plan. What the results were. 1,300 results that were consistent and matched what the other company, which you, Judge Gilman, indicated, other NSAFE, were consistent with. So the record before- This is what I want to follow. I want to stick to this question. You said everything that's done pursuant to the plan is discretionary. Well, if I said that, Your Honor, I misspoke. What did you say? Everything that's done pursuant to this plan is- Everything that involves choice in terms of how to address safety is discretionary. It involves considering- So if you drive too fast, which involves safety, you've decided not to be safe while you're driving fast. Yes, Your Honor. That's what I'm saying. It proves too much. Safety related to the ash cleanup. That's exactly what I mean. As to driving- Well, that's true, but the underlying difficulty is to preserve the decisions that the agency imposes on the contractor. So if the agency says, you can do this and you don't have to do this, then you ought to be able to do this and not do that and not worry that they're going to second-guess that decision by suing you. I'm not sure that every one of the kinds of challenges they're making is subject to that kind of concern. For instance, saying you can't wear this mask, is not being able to wear the mask something that's required by the plan? The plan requires- The plan, Your Honor, Judge Rogers, states that masks are not necessary. Stating that they're not necessary doesn't mean that it's inconsistent with the plan to permit them. Well, Your Honor, the plan does have a provision concerning voluntary use of respirators that, if followed, some of the plaintiffs did follow it and they were allowed to use respirators. I know, but you're talking now about allowing and demanding, but I'm talking about their allegation that it was precluded. It seems to me you have to say, and maybe you can. I'm not saying you can't. It just seems to me that you're asking us to set a standard which is too broad. The standard would have to be something like, is the action of you something that the agency has legitimately decided you shouldn't do? Not something that the agency has decided is up to you. because if the agency has decided it's up to you, and then you're careless or violating somebody's negligence standard, they ought to be able to recover against you. Unless it's something where they said, you only have so much money, we only want you to spend it on 15 gas masks and not on 30, all right? Then you could say, well, if you are now being required to buy that 16th mask, you're violating the obligations under your guidance from the agency. But if it says you have to buy at least 15 and the rest is up to you, and then you make that rest decision in a way that violates the negligence standard to some injured person, I don't see how the fact that the agency gave you that choice. It's not interfering with the agency's policy decisions. I'm having trouble seeing how that should be covered by contractor immunity. Well, I'm going to try my best to- That's my question. Persuade you. That's the question I have. Well, with respect to the respirators, their allegation is that Jacobs violated federal law by not providing them respirators for use at this site. They've contended that doctors gave them prescriptions to use these respirators. And Jacobs' response to that is- By the way, I thought they said federal and state law? Federal and state law. Sorry, Your Honor. What Jacobs is saying in response to that is that the plan has provisions dealing with personal protective equipment. The plan, which was approved by the TVA, provides that personal protective equipment is not necessary and is not needed on this site unless it gets to the point where these permissible exposure limits are over the site. Inconsistent with the plan to allow it? Yes. And here's why. I'm okay with that. If that's what the district court relied on is that it's inconsistent with the plan to permit what they're asking for, then that would be immune under- Explain that to us. It is, and I'll explain to you why. Because that's why there's the whole provision concerning the voluntary use of a respirator. And then having these plaintiffs go through various steps to make sure that they aren't creating other hazards by wearing respirators out on the site. I mean, you're doing work out in a dust field that's 95 degrees in East Tennessee with people that may not have the greatest health conditions in the world wearing a respirator. They could then cause something, going back to what you were talking about, of someone driving in a car. They could run over somebody because they're delusional. Is that the analysis that the district court went through for all of these allegations? Seems to me that's what the district court would have to find in order to find contractor immunity. I believe the district court did find that. For all of those things? Yes, your honor. I did. Does it make a difference if this is... What if we don't think this is a subject matter jurisdiction issue? In other words, there's an easy part of that, which is, okay, fine, 12B1, 12B6. If it still fails to state a claim, who cares? But if you don't think it's subject matter jurisdiction, does that suggest that some of these inquiries, some of your back and forth with Judge Rogers might want to require a little fact development? I do not think so. First of all, I think this is a subject matter jurisdiction issue. Do you have any basis for that? Well, the assumption of my question was I'd rather you didn't go down that road. You're going to have a hard time persuading me on that one, for what it's worth. Try to deal with my question on the assumption it's not subject matter jurisdiction. Well, on the assumption it's not subject matter jurisdiction, and the district court was given the ability to look at this evidence and to basically conclude, as it did, that the facts presented showed that there had been no exceeding authority of the contract between TVA and Jacobs, and that the contract was validly conferred from the government to Jacobs, and there's no dispute in that issue. I think with those facts in mind, the case gets dismissed under Ackerson v. Bean-Dredging, and it gets dismissed under Yearsley. Just out of curiosity, you're taking the case as we think about this case the same way, even if the defendant was not an independent contractor, even if the defendant was TVA. Analytically, you see it as the same basic questions? I do, because all the conduct that they allege is at issue, that they were damaged by this harmful conduct, is conduct which the district court had already ruled and which I think the other cases support is discretionary conduct. It involves cleaning up a hazardous waste site, and the statute concerning, and this is cited in our briefs, says that that conduct is discretionary government function conduct. Removal and cleanup of a hazardous coal ash spill like this is discretionary function conduct, and is then subject to discretionary function immunity. So my position is that TVA would be immune if they were the target defendant here, but they're not. Your Honor, I'd also like to just address some arguments that Appellant's Counsel made concerning Jacobs violated the contract, violated statutes, violated this, violated that. There's a lot of allegations, but there's no basis for those allegations.  They keep alleging, you violated this, you violated that, you violated this, but they don't go forward with any analysis of these directives, mandatory or not. We submit to you, Your Honors, that none of them are mandatory. They all allow an element of choice on the part of Jacobs. Were violated, and we have thoroughly briefed this issue and pointed out each one of these potential statutes that they claim that Jacobs violated are not mandatory. They're in fact subject to discretion on the part of the person that's implementing them. What if we think about this case through the lens of Boyle? Do you know that case? Yes, Your Honor. So that seems like a different way of thinking about it. It's not sovereign immunity. It's kind of an obstacle preemption type thing, which is pretty ineffable and hard to figure out. Why is there obstacle preemption here with allowing the employees to enforce state tort laws? Well, I think- I mean, I just, that's not obvious to me. Well, to me, that- Let me just give you one more example. So this is a little bit of a variation on Judge Rogers' question. I mean, I assume you would agree if you fired somebody improperly under, your client fired somebody improperly under state law, they could sue there, right? Yes. It's discretionary to fire somebody, but you would say, well, the discretion doesn't relate to the safety plan. So we know that you can, we know even though it's the federal government and federal contractors, you can enforce state law. We know that's allowed, and Boyle doesn't get in the way of that. So how is it obstacle preemption here? Your Honor, I view Boyle as actually supporting our position in this case, and here's why. I view Boyle as a case where the United States Supreme Court looked at this balance of balancing between state tort liability and allowing a plaintiff to recover for state tort negligence, or I would say also purposeful conduct, as they want to allege, against this very important federal interest in allowing the federal government to be able to contract with private parties like my client, Jacobs, to accomplish very necessary things. In this case, cleaning up a bad waste site with coal ash all over the place. And that you've got to balance those, and, Your Honor, I think when you look at that case, it supports it because public policy is served by having Jacobs come in, develop this site plan, clean up this site consistent with that plan, which we submit it did, and that outweighs any tort claim that these plaintiffs have. What if you're driving away in a truck that has a hole in it, and some of the ash gets out and causes injury, and say there's nothing in the plan that deals with that? You would say there's discretionary function? I would not. You would not. That deals with safety. It deals with safety and pollution by coal ash and all of that. I mean, it makes sense to me that it would not, but I'm having trouble seeing how that reconciles with every one of the numerous things that they argue. Well, my response to that, Your Honor, briefly would be that I'm not aware of any provision in the site-wide safety health plan or in any contract at issue that would permit... So it's the absence of something which affirmatively permits the hole. Correct. Just a really quick question, hopefully yes or no. When you think through all, whether it's the sovereign immunity way of thinking about it or Boyle, I take it your analytics are, well, it really doesn't matter because at the end of the day, you're still going back to discretion. Is that fundamentally how you see it? That's fundamentally how I see it. Okay, thanks. Thank you, counsel. Thank you, Your Honor. Do we have rebuttal time? Good morning, Your Honors. Josh Bond from Hodges, Dowdy, and Carson in Knoxville. I needed to follow up with the issue of retaliation because my clients, Kevin Thompson, Sean Smith, filed a motion to amend the complaint, specifically alleging an 11th claim for relief, which is that of retaliation after reporting employment-related low testosterone levels and requesting for safety equipment, including that of respirators. The trial court held that the amendment was futile because neither Mr. Thompson nor Mr. Smith alleged that they were employed by Jacobs, and that is— Pardon me. Did you file a separate brief on this issue? I did not, Your Honor, because after reading the cases from Judge Varlin cited about the essential elements on retaliatory discharge, I scratched my head and said, as he's pointed out— Is this issue in the briefs? It is not, Your Honor. You're just raising a new issue now on rebuttal and oral argument that hasn't been raised? If I—I think it was discussed— Is that true? Yes, Your Honor. And I will request to supplement my brief, and I came up—I didn't find this until last night getting ready for oral argument—a specific statute that I did not know existed. It's TCA 50-6-113 extends workers' compensation benefits to a principal or general contractor for injury sustained by employees of a subcontractor when the principal or general exercises control over the subcontractor. And that issue—it's a Stratton case, as talked about. It's 695 Southwest 2nd 947. In my mind, because of that statute, you do not have to have the essential element of You have any arguments that respond to the arguments that were made orally here today? I do, Your Honor. I would submit that the cases cited by the appellee dealing with the difference between intentional versus non-intentional conduct, that in this particular matter, we have alleged intentional conduct. And I think that intentional conduct that was outside of the discretionary immunity, that which is discretionary, and that is different from negligent conduct and that of where one would have a choice to act, whether you be the sovereign or whether you be the sovereign contracting entity. Thank you, case. Thank you. Case will be submitted.